**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of __Delaware__
                              *(State)*

Case number *(if known)*: _____ Chapter __11__

☐ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/24

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

**1. Debtor's name**

BL Acquisition II, Inc.

**2. All other names debtor used in the last 8 years**

Include any assumed names, trade names, and *doing business as* names

**3. Debtor's federal Employer Identification Number (EIN)**

8 6 - 1 1 4 6 0 2 2

**4. Debtor's address**

Principal place of business

27042 Towne Centre Drive
Number    Street

Suite 270

Foothill Ranch,    CA  92610-2811
City               State    ZIP Code

Orange County
County

Mailing address, if different from principal place of business

Number    Street

P.O. Box

City    State    ZIP Code

Location of principal assets, if different from principal place of business

Number    Street

City    State    ZIP Code

**5. Debtor's website (URL)**

_____

Debtor    BL Acquisition II, Inc.
_____    Case number (if known)_____
          Name

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

3  3  9  1

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725 (amount subject to adjustment on 4/01/25 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes. District _____ When _____ Case number _____
                                      MM / DD / YYYY

         District _____ When _____ Case number _____
                                      MM / DD / YYYY

Debtor ___BL Acquisition II, Inc._____     Case number (if known)_____
         Name

| | |
|---|---|
| **10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**<br><br>List all cases. If more than 1, attach a separate list. | ☐ No<br>☒ Yes.  Debtor ___See Rider_____  Relationship _____<br><br>District ___Delaware_____  When ___10/1/2024___<br>MM / DD / YYYY<br><br>Case number, if known _____ |

| | |
|---|---|
| **11. Why is the case filed in *this* district?** | *Check all that apply:*<br>☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.<br>☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district. |

| | |
|---|---|
| **12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?** | ☒ No<br>☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.<br><br>**Why does the property need immediate attention?** *(Check all that apply.)*<br>☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.<br>What is the hazard? _____<br>☐ It needs to be physically secured or protected from the weather.<br>☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).<br>☐ Other _____<br><br>**Where is the property?** _____<br>Number    Street<br><br>_____<br><br>_____<br>City                                    State ZIP Code<br><br>**Is the property insured?**<br>☐ No<br>☐ Yes. Insurance agency _____<br>Contact name _____<br>Phone _____ |

---

### Statistical and administrative information

| | |
|---|---|
| **13. Debtor's estimation of available funds** | *Check one:*<br>☒ Funds will be available for distribution to unsecured creditors.<br>☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. |

| | | | |
|---|---|---|---|
| **14. Estimated number of creditors** | ☐ 1-49<br>☐ 50-99<br>☐ 100-199<br>☒ 200-999 | ☐ 1,000-5,000<br>☐ 5,001-10,000<br>☐ 10,001-25,000 | ☐ 25,001-50,000<br>☐ 50,001-100,000<br>☐ More than 100,000 |

Debtor    BL Acquisition II, Inc.
_____
          Name                                                    Case number (if known) _____

| 15. **Estimated assets** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☒ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| 16. **Estimated liabilities** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☒ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| 17. **Declaration and signature of authorized representative of debtor** | The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
|---|---|
| | I have been authorized to file this petition on behalf of the debtor. |
| | I have examined the information in this petition and have a reasonable belief that the information is true and correct. |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    10/1/2024
            MM  / DD / YYYY

Signed by
✗ *John R. Beaver*                                          John Beaver
229EE2629069497...
Signature of authorized representative of debtor            Printed name

Title    President & CEO

| 18. **Signature of attorney** | ✗ /s/ M. Blake Cleary | Date | 10/1/2024 |
|---|---|---|---|
| | Signature of attorney for debtor | | MM / DD / YYYY |

M. Blake Cleary
Printed name

Potter Anderson & Corroon LLP
Firm name

1313          North Market Street, 6th Floor
Number        Street

Wilmington                                  DE          19801
City                                        State       ZIP Code

(302) 984-6000                              bcleary@potteranderson.com
Contact phone                               Email address

3614                                        DE
Bar number                                  State

## <u>Rider</u>

## <u>Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor</u>

On the date hereof, each of the entities below (collectively, the "<u>Debtors</u>") filed a petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.  The Debtors are moving for joint administration of these cases under the case number assigned to Biolase, Inc.'s chapter 11 case.

- Biolase, Inc.

- BL Acquisition Corp.

- BL Acquisition II, Inc.

- Model Dental Office, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Biolase, Inc., *et al.*,[1] | Case No. 24 – [____] (___) |
| Debtors. | (Joint Administration Requested) |

**COMBINED CORPORATE OWNERSHIP STATEMENT PURSUANT TO**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE 1007 AND 7007.1**

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the debtors in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), hereby state as follows:

1.      No corporation owns 10% or more of any class of debtor Biolase, Inc.'s equity interests.

2.      Debtor BL Acquisition Corp. is 100% owned by debtor Biolase, Inc.

3.      Debtor BL Acquisition II, Inc. is 100% owned by debtor Biolase, Inc.

4.      Debtor Model Dental Office, LLC is 100% owned by debtor Biolase, Inc.

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Biolase, Inc. (2441); BL Acquisition Corp. (4140); BL Acquisition II, Inc. (6022); and Model Dental Office, LLC (9372).  The Debtors' headquarters are located at 27042 Towne Centre Drive, Suite 270, Foothill Ranch, CA 92610-2811.

**Omnibus Written Consent in Lieu of a Meeting of
Biolase, Inc., BL Acquisition Corp.;
BL Acquisition II, Inc.; and Model Dental Office, LLC**

September 30, 2024

The undersigned, being (i) all of the members of the boards of directors or the boards of managers, or (ii) the sole or managing member, as applicable (in each case, a "Governing Body" and collectively, the "Governing Bodies"), of Biolase, Inc. ("Biolase"), BL Acquisition Corp., BL Acquisition II, Inc., and Model Dental Office, LLC (each, a "Company" and together, the "Companies"), hereby consent, in accordance with the organizational documents of each Company and applicable state laws, to the following actions and adopt the following resolutions with respect to each Company in lieu of a meeting effective as of the date hereof.

## Chapter 11 Filing

WHEREAS, each Governing Body has considered presentations by the financial and legal advisors of each of the Companies regarding the liabilities and liquidity situation of each of the Companies, the strategic alternatives available to each of the Companies, and the effect of the foregoing on each Company's business;

WHEREAS, each Governing Body has had the opportunity to consult with the financial and legal advisors of the Companies and fully consider each of the strategic alternatives available to the Companies;

WHEREAS, each Governing Body has had the opportunity to consult with the financial and legal advisors of the Companies and review chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the preparation materials provided by the financial and legal advisors, and each Governing Body recommends the adoption of these resolutions;

NOW, THEREFORE, BE IT RESOLVED, that in the business judgment of each Governing Body, it is desirable and in the best interests of each Company (including considering its creditors and other parties in interest) that each Company shall be, and hereby is, authorized to file, or cause to be filed, a voluntary petition for relief (each a "Chapter 11 Case" and collectively, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and any other petition for relief or recognition or other order that may be desirable under applicable law;

FURTHER RESOLVED, that any member, officer, or director of each Company, or any other duly appointed officer or other person acting at the direction of the foregoing officers of each Company (individually, the "Authorized Signatory" collectively, the "Authorized Signatories"), acting alone or with one or more other Authorized Signatories be, and they hereby are, authorized, empowered, and directed to execute and file on behalf of each Company all petitions, schedules, lists, motions, chapter 11 plans, and other papers or documents, and to take any and all actions that they deem necessary, proper, or convenient to obtain relief under chapter 11

of the Bankruptcy Code, including any action necessary to maintain the ordinary course operation of each Company's business;

FURTHER RESOLVED, that all acts lawfully done or actions lawfully taken by any Authorized Signatory to seek relief on behalf of the Company under chapter 11 of the Bankruptcy Code, or in connection with the ordinary course operations of the Company during the Chapter 11 Case, or any matter related thereto, in connection with the Company's ordinary course operations be, and hereby are, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Company as fully as if such actions had been presented to the Board for its prior approval; and it is further; and

FURTHER RESOLVED, that all acts and deeds previously performed by any of the Authorized Signatories or officers of any of the Companies before the adoption of the foregoing recitals and resolutions that are within the authority conferred by the foregoing recitals and resolutions, are hereby ratified, confirmed, and approved in all respects as the authorized acts and deeds of the Companies.

**Retention of Professionals**

WHEREAS, each Governing Body has considered presentations by the financial and legal advisors of each Company regarding the retention of such financial and legal advisors by each Company.

NOW, THEREFORE, BE IT RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") as bankruptcy co-counsel to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain Pillsbury;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ Potter Anderson & Corroon LLP ("Potter Anderson") as bankruptcy co-counsel to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain Potter Anderson;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ the firm of SSG Capital Advisors ("SSG") as the Companies' investment banker to assist the Companies in connection with a sale or other strategic transaction of the Companies' assets; and in connection therewith, each of the Authorized

Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain SSG;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ Epiq Corporate Restructuring, LLC ("Epiq") as notice, claims, and balloting agent and as administrative advisor to represent and assist each Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed appropriate applications for authority to retain Epiq;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ B. Riley Financial, Inc. ("B. Riley") as the Companies' financial advisor; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed appropriate applications for authority to retain B. Riley;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ any other professionals to assist each Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary, proper, or convenient; and

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, with the power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that each of the Authorized Signatories deem necessary, proper, or desirable in connection with each Company's Chapter 11 Case, with a view to the successful prosecution of such case.

**Debtor-in-Possession Financing, Cash Collateral, and Adequate Protection**

WHEREAS, Biolase is party to that certain Credit Agreement, dated as of November 9, 2018 (as amended, restated, or supplemented from time to time) (the "Credit Agreement"), pursuant to which SWK Funding LLC ("Lender") extended certain financial accommodations to Biolase;

WHEREAS, reference is made to the Terms and Conditions of Proposed Senior Secured, Super-Priority Debtor-in-Possession Credit Facility (together with any and all exhibits, schedules, and annexes thereto, the "DIP Term Sheet") providing for a secured term loan financing facility of up to $7.0 million in the aggregate (as amended, restated, or supplemented from time to time,

the "DIP Facility") dated as of, or about, the date hereof, that sets forth the terms and conditions of the debtor-in-possession financing to be provided to Biolase by Lender.

NOW, THEREFORE, BE IT RESOLVED, that, in the judgment of the Governing Body of each Company, each such Company will receive benefits from the DIP Facility and the loans contemplated thereby, and it is desirable and in the best interest of each Company, each Company's equity holders, creditors, and other parties in interest that the form, terms, and provisions of the DIP Term Sheet and all other documents, agreements, instruments or certificates, intellectual property security agreements, joinders, and consents to be executed, delivered, or filed by each Company in connection with the DIP Term Sheet, and the transactions contemplated therein (including the borrowings and other extensions of credit thereunder, and the guaranties, liabilities, obligations, security interest granted, and notes issued, if any, in connection therewith) be, and hereby are, authorized, adopted, and approved in substantially the form presented to the Governing Body of each Company, together with such changes as may be approved by the Authorized Signatories executing and delivering the same, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

FURTHER RESOLVED, that the Governing Body of each Company has determined that it is necessary and in the best interest of each Company's business and affairs, each Company's equity holders, creditors, and all other parties in interest to execute, deliver and perform the DIP Term Sheet (in substantially the form presented to the Governing Body of each Company) and to consummate the transactions contemplated thereby, including any borrowings, the performance of any guarantees and the granting of any security interests and liens; and in connection therewith, each Company's execution and delivery of, and incurrence and performance of its obligations in connection with the DIP Term Sheet, and consummation of the transactions contemplated thereby or entered into in connection therewith, are hereby, in all respects, authorized and approved;

FURTHER RESOLVED, that each Company will obtain benefits from (a) the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which is security for the Lender under the Credit Agreement, and (b) the incurrence of financing obligations under the DIP Facility (collectively, the "DIP Financing");

FURTHER RESOLVED, that to use and obtain the benefits of (a) the DIP Financing and (b) the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, the Companies will provide certain liens, claims, and adequate protection to the Lender to secure the obligations of the Companies under the DIP Facility (the "DIP Obligations") as documented in a proposed order in interim and final form (the "DIP Orders"), authorizing and approving the DIP Term Sheet and the transactions contemplated thereby, and submitted for approval to the Bankruptcy Court;

FURTHER RESOLVED, that the form, terms, and provisions of the DIP Orders to which each Company is or will be subject, and the actions and transactions contemplated thereby, are hereby authorized, adopted, and approved, and each of the Authorized Signatories of each such Company be, and hereby is, authorized and empowered, in the name of and on behalf of each such Company, to negotiate, or cause to be prepared and negotiated, and to take such actions

necessary to execute, deliver, perform, and cause the performance of, each DIP Order and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents relating to the transactions contemplated thereby to which each such Company is or will be a party, including, but not limited to, any security agreements, pledge agreements, guaranty agreement, assignment documents, notices, financing statements, mortgages, intellectual property filings, tax affidavits, fee letters, and other instruments as the Lender may reasonably request or as may be necessary or appropriate to create, preserve, and perfect the liens of the Lender, purported or required pursuant to any of the transaction documents to be created in the DIP Collateral (as defined in the DIP Term Sheet), such agreements with third parties (including bank agency agreements, lockbox agreements, control agreements, landlord agreements, and warehouse letters) relating to the DIP Collateral, any swap contracts or hedging agreements and such other loan documents, guarantees, instruments, certificates, and documents as may be reasonably requested by the Lender, or required by the DIP Orders, DIP Term Sheet, or any of the foregoing (collectively, the "DIP Documents"), with such changes, additions, and modifications thereto as any Authorized Signatory executing the same shall approve, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

FURTHER RESOLVED, that incurring the liabilities and obligations arising from each DIP Order and each DIP Document by the Companies party thereto, (i) is necessary and convenient to the conduct, promotion, and attainment of the business of such Companies, and (ii) is reasonably expected to benefit the Companies, directly or indirectly;

FURTHER RESOLVED, that each Company, as debtor and debtors-in-possession under the Bankruptcy Code be, and hereby is, authorized to incur the DIP Obligations, including the borrowing of the loans under the DIP Term Sheet and other obligations related to the DIP Financing, and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents, including granting liens on and security interests in its assets, including the DIP Collateral, to the Lender to secure such obligations (collectively, the "DIP Transactions");

FURTHER RESOLVED, that each of the Authorized Signatories of each Company, acting alone or with one or more other Authorized Signatories, be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each such Company, as debtors and debtors-in-possession, to take such actions as in their discretion are determined to be necessary, desirable, or appropriate to execute the DIP Transactions, including the negotiation, execution, and delivery of: (a) the DIP Documents; (b) such other instruments, certificates, notices, assignments, and other documents, including any amendments to any DIP Documents, as may be reasonably requested by the Lender; and (c) such forms of deposit account control agreements, officer's certificates, and compliance certificates as may be required by the DIP Documents, in the name of and on behalf of each Company, with such changes therein as shall be approved by the Authorized Signatories executing the same, with such execution by said Authorized Signatory to constitute conclusive evidence of his or her approval of the terms thereof, including any departures therein from any form presented to the Governing Bodies of such Companies;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company, acting alone or with one or more other Authorized Signatories, be, and hereby is, authorized,

directed, and empowered in the name of, and on behalf of, each such Company, as debtors and debtors-in-possession, to cause each such Company to guarantee the DIP Obligations under the DIP Documents and to assign, transfer, pledge, and grant to the Lender, a security interest in all or substantially all the assets of such Company, as collateral security for the prompt and complete payment and performance when due of the DIP Obligations under the DIP Term Sheet, the DIP Orders, and the other DIP Documents to which such Company is a party or which it is subject to, and to take or cause to be taken any such actions as may be necessary, appropriate, or desirable to cause the Companies to create, perfect, and maintain a security interest in such Companies' property or assets constituting DIP Collateral as described or contemplated in the DIP Documents;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of each Company with respect to the transactions contemplated by these resolutions, whether existing now or in the future, in each case, as such Authorized Signatory shall deem necessary or desirable in such Authorized Signatory's reasonable business judgment, including the authorization of resolutions and agreements necessary to authorize the execution, delivery, and performance pursuant to the DIP Documents (including certificates, affidavits, financing statements, notices, reaffirmations, and amendments and restatements thereof or relating thereto) as may be necessary, appropriate, or convenient to effectuate the purposes of the transactions contemplated therein;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company to file, or to authorize the Lender to file, any Uniform Commercial Code (the "UCC") financing statements, any other equivalent filings, any intellectual property filings and recordation, and any necessary assignments for security or other documents in the name of each Company that the Lender deems necessary or appropriate to perfect any lien or security interest granted under the DIP Orders and the DIP Documents, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired," and other similar descriptions of like import, and to execute and deliver, and to record, or authorize the recording of, such mortgages and deeds of trust in respect of real property of each Company and such other filings in respect of intellectual and other property of each such Company, in each case as the Lender may reasonably request to perfect the security interests of the Lender under the DIP Orders or any of the other DIP Documents;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company to take all such further actions, including to pay all fees and expenses payable in accordance with the terms of the DIP Documents, to arrange for and enter into supplemental agreements, amendments, instruments, certificates, or documents relating to the transactions contemplated by any of the DIP Documents and to execute and deliver all such supplemental agreements, amendments, instruments, certificates, or documents in the name and on behalf of each of the Companies, which shall in their sole judgment be necessary, proper, or advisable in order to perform such Companies' obligations under, or in connection with, any of the DIP Documents and the transactions contemplated therein (execution by such Authorized Signatory

to constitute conclusive evidence of such judgment), and to carry out fully the intent of the foregoing resolution. The performance of any such further act or thing and the execution of any such document or instrument by any of the Authorized Signatories of the Companies pursuant to these resolutions shall be conclusive evidence that the same have been authorized and approved by the Companies in every respect; and

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized to execute and deliver to the Lender, and to perform the applicable Company's obligations under, all other documents, certificates, instruments, agreements, and writings including any interest rate swaps, caps, collars, or similar hedging agreement and any financing statements (or amendments thereto) that may be contemplated by, or required in connection with, the DIP Documents, these resolutions, and the transactions described herein and therein, and to do all such acts and things as any person hereinafter designated to execute such documents on behalf of such Company determines to be necessary or advisable in connection with, or as contemplated by, or for the purpose of giving effect to, or carrying out the provisions of, the DIP Documents, such determination to be conclusively evidenced by such person's signature thereon or completion thereof, as applicable.

### Stalking Horse Asset Purchase Agreement

BE IT RESOLVED, that in connection with the Chapter 11 Cases, the Governing Bodies have determined that it is in the best interests of the Companies and their respective stakeholders that the Companies enter into the transactions contemplated by that certain Asset Purchase Agreement (the "Stalking Horse APA") with Sonendo, Inc. or its designee, on the terms and conditions substantially similar to those set forth in the form previously provided to the Governing Bodies, and with such changes thereto as the Authorized Signatories shall approve, and any other agreements, consents, certificates, amendments, assignments, and instruments in connection therewith (together with the Stalking Horse APA, the "Sale Documents"), in each case subject to approval by the Bankruptcy Court;

FURTHER RESOLVED, that the form, terms, and provisions of each of the Sale Documents and the Companies' performance of their obligations thereunder, are hereby, in all respects confirmed, ratified, and approved;

FURTHER RESOLVED, that the Authorized Signatories are hereby authorized, empowered, and directed, in the name and on behalf of the Companies, to negotiate and approve the terms, provisions of, and performance of, and to prepare, execute and deliver the Sale Documents, in the name and on behalf of the Companies, and such other documents, agreements, instruments, and certificates as such Authorized Signatory executing the same considers necessary, appropriate, proper, or desirable to effectuate the transactions contemplated by the Sale Documents;

FURTHER RESOLVED, that the Authorized Signatories are hereby authorized, empowered, and directed, in the name and on behalf of the Companies, to take all such further actions, including to pay all fees and expenses, in accordance with the terms of the Sale Documents, which shall, in such Authorized Signatory's sole judgment, be necessary, proper, or advisable to perform the Companies' obligations under or in connection with the Sale

Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and be it

FURTHER RESOLVED, that any Authorized Signatories are hereby authorized, empowered, and directed, in the name and on behalf of the Companies, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Sale Documents which shall, in such Authorized Signatories' sole judgment, be necessary, proper, or advisable.

**General Resolutions**

NOW, THEREFORE, BE IT RESOLVED, that the Authorized Signatories of each of the Companies be, and each of them hereby is, authorized, empowered, and directed to execute, acknowledge, verify, deliver, and file any and all such other agreements, documents, instruments, and/or certificates and to take such other actions as may be necessary, proper, or appropriate in order to carry out the intent and purposes of any of the foregoing resolutions;

FURTHER RESOLVED, that the Authorized Signatories be, and each of them hereby is, authorized and empowered, on behalf of and in the name of the Company, to pay and direct the payment of all fees and expenses permitted under applicable law as in their good faith judgment shall be necessary, appropriate, or advisable to effectuate the purpose and intent of any and all of the foregoing resolutions;

FURTHER RESOLVED, that each Governing Body of each Company has received sufficient notices of the actions and transactions relating to the matters contemplated by any of the foregoing resolutions, as may be required by the organizational documents of each Company, or hereby waive any right to have received such notices;

FURTHER RESOLVED, that each of the members of the board of managers, board of directors, restructuring committees, the sole member, the manager or the managing member, as applicable, hereby irrevocably waives notice of the time, place, and purposes of a Meeting and any adjournments thereof, to the extent such notice is required by the applicable organizational documents of each Company;

FURTHER RESOLVED, that any and all actions heretofore or hereafter taken and expenses incurred in the name of and on behalf of any Company by any officer, director, or other Authorized Signatory of any Company in connection with or related to the matters set forth or contemplated by any of the foregoing resolutions be, and they hereby are, approved, ratified, and confirmed in all respects as fully as if such actions had been presented to the Governing Bodies for approval prior to such actions being taken; and

FURTHER RESOLVED, that any Authorized Signatory of any of the Companies is hereby authorized to certify to third parties with respect to adoption of any of the foregoing resolutions in the form and substance satisfactory to them.

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF**, the undersigned have executed this Omnibus Written Consent as of the date first written above.

**BOARD OF DIRECTORS OF BIOLASE, INC.:**

Signed by:

*John Beaver*

229EE2629069497

John Beaver

DocuSigned by:

F93B7AFD68E1417

Dr. Jonathan T. Lord

DocuSigned by:

646C12DD92F4498

Dr. Kathleen T. O'Loughlin

DocuSigned by:

MARTHA SOMERMAN

04554D6761A242B

Dr. Martha Somerman

Dr. Kenneth P. Yale

**IN WITNESS WHEREOF**, the undersigned have executed this Omnibus Written Consent as of the date first written above.

**BOARD OF DIRECTORS OF BIOLASE, INC.:**

_____

John Beaver

_____

Dr. Jonathan T. Lord

_____

Dr. Kathleen T. O'Loughlin

_____

Dr. Martha Somerman

_____

Dr. Kenneth P. Yale

*[Signature Page to Omnibus Action by Written Consent]*

**BOARD OF DIRECTORS OF**
**BL ACQUISITION CORP.:**

Signed by:

*John Beaver*

229EE2629069497

John Beaver

*jennifer bright*

4AAC3EB3DB4A454

Jennifer Bright

**BOARD OF DIRECTORS OF**
**BL ACQUISITION II, INC.;**

Signed by:

*John Beaver*

229EE2629069497

John Beaver

*jennifer bright*

4AAC3EB3DB4A454

Jennifer Bright

**MANAGERS OF MODEL**
**DENTAL OFFICE, LLC:**

Signed by:

*jennifer bright*

4AAC3EB3DB4A454

Jennifer Bright

Signed by:

*Steven Sandor*

A3C2DF39ECB849D

Steven Sandor

*[Signature Page to Omnibus Action by Written Consent]*

| Fill in this information to Identify the case: |
| :--- |
| Debtor Name:   Biolase, Inc. |
| United States Bankruptcy Court for the:       District of Delaware |
| Case Number (If known): |

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A consolidated list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| :--- | :--- | :--- | :--- | :--- | :--- | :--- | :--- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | GREENBERG TRAURIG LLP 2000 UNIVERSITY AVENUE SUITE 602 EAST PALO ALTO, CA  94303 | CONTACT: MICHELLE MARTIN PHONE: (650) 328-8500 FAX:  650-328-8508 MICHELLE.MARTIN@GTLAW.COM | LEGAL | | | | $360,730.81 |
| 2 | SIDLEY AUSTIN, LLP 1 S DEARBORN ST CHICAGO, IL  60603 | CONTACT: MICHAEL A. GORDON PHONE: 212-839-5532 FAX: 312-853-7036 MGORDON@SIDLEY.COM | LEGAL | | | | $235,464.34 |
| 3 | ORATECH 475 W. 10200 SOUTH SOUTH JORDON, UT  84095 | CONTACT: MEGAN LAMB PHONE: 801.619.0282 MEGGIN.LAMB@ORATECH.COM | TRADE | | | | $219,800.00 |
| 4 | OPTEK SYSTEMS 12 PILGRIM ROAD GREENVILLE, SC  29607 | CONTACT: DIWAKAR RAMANATHAN PHONE: (864) 272-2640 FAX: 864-272-2630 DRAMANATHAN@OPTEKSYSTEMS.COM | TRADE | | | | $201,186.29 |
| 5 | FABRINET CO, LTD 5/6 M006, SOI KHUNPRA, PHAHOLYOTHIN RD KLONGNUENG, KLONGLUANG PATUMTHANEE  12120 THAILAND | CONTACT: SELVAN CHANDRASEKARAN PHONE: +65 62381916 SELVANC@FABRINET.CO.TH | TRADE | | | | $160,274.98 |

Debtor: Biolase, Inc.                                           Case Number (if known):

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 6 NORTHROP GRUMMAN SYNOPTICS GENERAL POST OFFICE P O BOX 26708 NEW YORK, NY  10086708 | CONTACT: KYLE LEYSATH PHONE: 704588-2340 KYLE.LEYSATH@NGC.COM | TRADE | | | | $118,910.06 |
| 7 JOHNSON PRODUCTS, INC. 149 LA PORTE STREET P.O. BOX 660734 ARCADIA, CA  91066-0734 | CONTACT: SAM LAPORTE PHONE: (626) 445-1411 FAX: 626445-4325 S.LAPORTE@JOHNSONMAGICPRODUCTS.COM | TRADE | | | | $91,119.50 |
| 8 AMERICAN EXPRESS P.O. BOX 360002 FORT LAUDERDALE, FL  33336-0002 | CONTACT: MICHAEL HORNING PHONE: 623-462-4282 MICHAEL.K.AEXP.COM | TRADE | | | | $81,571.53 |
| 9 VANTRON TECHNOLOGY, INC 48434 MILMONT DR FREMONT, CA  94538-7326 | CONTACT: EASEN HO - CO - FOUNDER PHONE: (510) 304-7666 FAX: 650600-3791 SALES@VANTRONTECH.COM | TRADE | | | | $60,841.00 |
| 10 BLANK ROME LLP ONE LOGAN SQUARE, 130 N 18TH STREET PHILADELPHIA, PA  19103-6998 | CONTACT: MATTHEW J COMISKY PHONE: 215-569-5500 FAX: 215-569-5555 MATTHEW.COMISKY@BLANKROME.COM | LEGAL | | | | $59,569.50 |
| 11 LASERVISION-USA 595 PHALEN BOULEVARD SAINT PAUL, MN  55130 | CONTACT: TOM POOLE PHONE: (800) 393-5565 INFO@LASERSAFETY.COM | TRADE | | | | $55,994.12 |
| 12 FOOTHILL CORPORATE 1 MT, LLC PO BOX 31001-2769 PASADENA, CA  91107 | CONTACT: SHEENA BOKAMPER PHONE: 310-988-4231 SBOKAMPER@NASASSETS.COM | RENT | | | | $53,595.85 |
| 13 AXIAN TECHNOLOGY , INC. 18000 N BLACK CANYON  HWY PHOENIX, AZ  85053 | CONTACT: DANIEL SAHHAR - PRESIDENT PHONE: (623) 580-0800 FAX: 623580-8008 SALES@AXIANTECH.COM | TRADE | | | | $44,292.57 |
| 14 RPMC LASERS INC 8495  VETERANS  MEMORIAL PKWY OFALLON, MO  63366 | CONTACT: TOM PALLETT PHONE: (636) 272-7227 EXT. 2280 INFO@RPMCLASERS.COM | TRADE | | | | $43,850.00 |
| 15 CHONGHONG INDUSTRIES LTD. HUACHUANG  INTERNATIONAL COMMERCE BUILDING 2006/2007 HONGHUANG ROAD.10.JIANGBEI DISTRICT CHONGQING  400020 CHINA | CONTACT: JIM CHONG PHONE: (862) 367-6090 EXT. 99XX FAX: 86 23 89119130 JIM@CHONGHONG.COM | TRADE | | | | $41,838.00 |

Debtor: Biolase, Inc.

Case Number (if known):

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 16 BP RAPID MANUFACTURING CO LIMITED ROOM 401, THE RESEARCH AND INNOVATION BUILDING YANLUO INNOVATION VALLEY, SHENZHEN 518103 CHINA | CONTACT: KENZI LIANG PHONE: (867) 558-1700 EXT. 0510 SERVICE@BETTERPROTOTYPE.COM | TRADE | | | | $41,500.00 |
| 17 FAEGRE DRINKER BIDDLE & REATH LLP 222 DELAWARE AVENUE, SUITE 1410 WILMINGTON, DE 19801 | CONTACT: FRANCIS DIGIOVANNI, PARTNER PHONE: 302-467-4266 FRANCIS.DIGIOVANNI@FAEGREDRINKER.COM | LEGAL | | | | $36,428.30 |
| 18 CASIX, INC 20 FUXING STREET FUXING INVESTMENT DISTRICT FUZHOU, FUJIAN 350014 CHINA | CONTACT: NI CAIN PHONE: 86-591-83610148 FAX: 86 591 8362 1248 CAIN.NI@CASIX.COM | TRADE | | | | $35,508.00 |
| 19 FEDERAL EXPRESS 2005 CORPORATE PLAZA/2ND FLOOR MEMPHIS, TN 38132 | CONTACT: MARIE SOLT & LES GILAUYS PHONE: 901369-3600 MARIE.SOLT@FEDEX.COM | TRADE | | | | $33,351.50 |
| 20 COMPUTERSHARE TRUST COMPANY (BLTY01) DEPT CH 19228 PALATINE, IL 60055-9228 | CONTACT: MOHAMMED MUQEETH PHONE: 630568-0200 ACCOUNTS.RECEIVABLE@COMPUTERSHARE.COM | LEGAL | | | | $30,386.00 |
| 21 FORMULA PLASTICS, INC 451 TECATE ROAD SUITE 2B TECATE, CA 91980 | CONTACT: BILL GERARD - PRESIDENT PHONE: (619) 478-1056 INFO@FORMULAPLASTICS.COM | TRADE | | | | $30,131.23 |
| 22 BAY ADVANCED TECHNOLOGIES 1715 E. NEWPORT CIRCLE SANTA ANA, CA 92705 | CONTACT: MATT SHEA PHONE: 949.525.8811 MSHEA@BAYAT.COM | TRADE | | | | $28,445.30 |
| 23 DOC MATTER INC. 460 BRANNAN ST UNIT 77452 SAN FRANCISCO, CA 94107-7605 | CONTACT: ELIZABETH AMAZING PHONE: 650-239-6938 EAMAZING@DOCMATTER.COM | LEGAL | | | | $27,562.50 |
| 24 BROADCASTMED LLC P.O. BOX 790379 ST. LOUIS, MO 63179-0379 | CONTACT: HILARY NODEN PHONE: (860) 953-2900 HILARY.NODEN@BROADCASTMED.COM | TRADE | | | | $26,200.00 |
| 25 INTEGRATED MEDIA SOLUTIONS,LLC DBA DENTAL PRODUCT SHOPPER 500 CRAIG ROAD, STE 101 MANALAPAN, NJ 07726 | CONTACT: DAVE BRANCH - CEO PHONE: 732577-6590 INFO@IMSNY.COM; DBRANCH@DENTALPRODUCTSHOPPER.COM | TRADE | | | | $24,750.00 |
| 26 CONTOUR METROLOGICAL & MFG., INC. 488 OLIVER DRIVE TROY, MI 48084 | CONTACT: MICHELLE DWER PHONE: (248) 273-1111 MDWYER@CMMOPTIC.COM | TRADE | | | | $23,000.00 |

Debtor: Biolase, Inc.

Case Number (if known):

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 27  SHENZHEN ZHICHUANGJIAYE TECHNOLOGY CO, LTD FUTAI  INDUSTRIAL PARK, LIAOKENG VILLAGE SHIYAN STREET, BAO  AN DISTRICT SHENZHEN CITY CHINA | CONTACT: BILL WANG PHONE: (0086)755-33914953 BILLWANG@ZHICHUANGCRE ATIVE.COM | TRADE | | | | $22,550.00 |
| 28  DARCOID COMPANY OF CALIFORNIA 950 3RD ST OAKLAND, CA  94607 | CONTACT: SAL AVERSA PHONE: (510) 836-2449 SAL@DARCOID.COM | TRADE | | | | $19,833.46 |
| 29  DDH ENTERPRISE INC 2220 OAK RIDGE WAY VISTA, CA  92081 | CONTACT: TONY DU PHONE: (760) 599-0171  EXT. 0254 FAX: 760599-9397 TONY DU <TONYDU@DDHENT.COM> | TRADE | | | | $18,936.46 |
| 30  TD ENGINEERING 2630 S SHANNON STREET SANTA ANA, CA  92704 | CONTACT: TIEU DO PHONE: (714) 933-0835 TDO@TDENGINEER.COM | TRADE | | | | $18,049.00 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Biolase, Inc.*, et al.,*[1] | Case No. 24-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**CERTIFICATION REGARDING DEBTORS' CREDITOR MATRIX**

In accordance with rule 1007(a) of the Federal Rules of Bankruptcy Procedure and rule 1007-2(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), a list of creditors (the "Creditor Matrix") of the above-captioned debtors and debtors in possession (the "Debtors") is filed by attachment hereto.

The Creditor Matrix has been prepared from the Debtors' books and records. The undersigned, John Beaver, the President and Chief Executive Officer of the Debtors, hereby certifies that the Creditor Matrix contains the names and addresses of all creditors of the Debtors that could be ascertained after diligent inquiry, based on a review of the Debtors' books and records and is consistent with the information contained therein. To the extent practicable, the Creditor Matrix complies with Local Rule 1007-1(a). The Debtors reserve the right to amend or supplement the Creditor Matrix as necessary.

Although the information in the Creditor Matrix is based on a review of the Debtors' books and records, the Debtors have not completed a comprehensive legal or factual investigation of

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Biolase, Inc. (2441); BL Acquisition Corp. (4140); BL Acquisition II, Inc. (6022); and Model Dental Office, LLC (9372). The Debtors' headquarters are located at 27042 Towne Centre Drive, Suite 270, Foothill Ranch, CA 92610-2811.

possible defenses of the Debtors and their estates to any claims of the potential claimants included in the Creditor Matrix.  In addition, certain of the parties included in the Creditor Matrix may not hold outstanding claims as of the date hereof, and therefore may not be creditors of the Debtors and their estates for purposes of these chapter 11 cases. Therefore, the Creditor Matrix is not (i) a waiver of any defense of the Debtors and their estates to any claim that may be asserted against the Debtors or their estates or (ii) an acknowledgement or admission of the validity, priority, or amount of any claim that may be asserted against the Debtors or their estates.

Dated: October 1, 2024

Signed by:

*John R. Beaver*

229EE2629069497...

John Beaver
President and Chief Executive Officer

4873-4954-6977.v1

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case and this filing:</strong></td></tr>
<tr><td>Debtor Name</td><td>BL Acquisition II, Inc.</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>District of Delaware (State)</td></tr>
<tr><td>Case number (If known):</td><td></td></tr>
</table>

# Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule _____*

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration  **Combined Corporate Ownership Statement and Certification of Debtors' Creditor Matrix**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __10/1/2024__          ✗ *John R. Beaver*
     MM / DD / YYYY                    Signature of individual signing on behalf of debtor

                              **John Beaver**
                              Printed name

                              **President & CEO**
                              Position or relationship to debtor